# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM E. ALTON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. WMN-10-1812 |
| MARYLAND DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES, *et al*. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

Pending is Defendants' Motions to Dismiss or for Summary Judgment. ECF No. 19 and 21. Plaintiff opposes the motions. ECF No. 27 and 28. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendants' motions, construed as motions for summary judgment, shall be granted.

## Background

Plaintiff, a disabled inmate afflicted with Brown-Sequard Syndrome[1], alleges he was discriminated against by Defendants because he is disabled and suffered retaliatory transfers in violation of his First Amendment rights. ECF No. 1. On August 30, 1993, Plaintiff was stabbed and wounded at the C-6 level of his cervical spine, leaving him partially paralyzed. *Id*. at p. 5. He states that by December 2002, he was able to walk short distances safely using "Canadian Crutches" and wearing leg braces. In 2006, however, Plaintiff suffered a lower back injury

---

[1] Brown-Sequard syndrome is a rare neurological condition characterized by a lesion on the spinal cord which results in weakness or paralysis (hemiparaplegia) on one side of the body and a loss of sensation (hemianesthesia) on the opposite side.characterized by a motor deficit and numbness to touch and vibration on the same side as the spinal injury, and loss of pain and temperature sensation on the opposite side. ECF No. 21 at p. 6, fn.2.

which worsened when he fell in the shower in 2008.  Currently Plaintiff is still able to walk with the aid of crutches and a knee brace, but suffers severe back pain and spasms.  *Id*. at p. 6.

On June 11, 2008, Plaintiff was transferred to Western Correctional Intstitution (WCI), a facility built to accommodate disabled prisoners with mobility issues or physical impairments.  Plaintiff was hired as a dietary worker at WCI on October 10, 2008, but was told he would be required to use a wheelchair while working.  The wheelchair requirement limited the type of work Plaintiff was permitted to do and delayed the start of his work assignment by approximately one month.  Plaintiff was assigned a wheelchair through the medical department on November 13, 2008.  Working areas in the back of the kitchen are not accessible by wheelchair, requiring Plaintiff to rely on other prisoners for food and  supplies such as hair nets and gloves.  Plaintiff alleges this reliance eventually turned other inmates against him.  ECF No. 1 at p. 6.  He claims he was "denied promotions, job skill training, equal access to programs, services, rehabilitative and occupational opportunities, as well as benefits, normally afforded to similarly situated inmates who are not disabled."  *Id*. at p. 6.

Plaintiff complained to his supervisors that he was not being treated the same as other workers who received bonus food portions.  ECF No. 1 at pp. 6 and 7.  Due to his complaints, he claims he was falsely accused of receiving an extra tray of food on November 17 and 18, 2008, and of eating at the wrong time.  He further alleges that, contrary to existing rules, dietary supervisors conspired with custody officers to intimidate disabled workers who were supposed to eat during the last feed-up lines of each shift.  Plaintiff claims his co-workers turned against him because dietary supervisors told them they could no longer use the dining hall toilet facilities or be present in the same work area when he was working.  Plaintiff was removed from the job when he was placed on administrative segregation on December 20, 2008.  *Id*. at p. 7.

On November 23, 2009, Plaintiff was again assigned to work in food service. Plaintiff explained to Lt. Lee that he coud work without the use of a wheelchair; he did not want to be harassed by officers or treated differently than other inmates; and he wanted to be trained in all areas of food service. ECF No. 1 at p. 7. Plaintiff states he informed Lee he had experience in cooking, cleaning, and preparing meals in the officer's dining room and that he had been so employed for nine months prior to his transfer to WCI. Based on this information, Plaintiff states he should have been allowed to start working at a skilled level rate of $1.15 to $1.35 per day, or at least given the opportunity to demonstrate his learned skills. *Id*.

Plaintiff claims he was allowed to work using his crutches and wearing leg braces without interference from dietary supervisors until he complained about being docked pay and being improperly logged in by Officers Maytrey and Shuck. He also complained he had been denied the benefits, training, and promotions normally given to other inmates who are not disabled. On December 10, 2009, after Plaintiff had written request slips concerning payroll errors, he was allegedly harassed by Shuck, Maytrey and Supervisor Lance Harbaugh. Plaintiff claims the officrs ignored his request for working supplies and instructed workers to "put small portions of food on [his] trays." ECF No. 1 at p. 8.

On January 20, 2010, Plaintiff again complained of the discriminatory policies in place at the WCI dietary department and was "accosted" by Shuck who blocked his entry into the back kitchen. ECF No. 1 at p. 8. Plaintiff explained to Shuck that he had no work-related medical restrictions, but Shuck became unreasonable and shouted 'you will no longer be allowed to use the same entrance as everybody elese, and you are supposed to be a wheelchair worker.' *Id*. Plaintiff told Shuck he could not be forced to use a wheelchair and if he was forced, this would be illegal.

On January 25, 2010, Harbaugh told Plaintiff he had to use a wheelchair while at work and Plaintiff refused. Harbaugh then allegedly threatened to have Plaintiff re-evaluated by the Medical Department to force him back into a wheelchair or reclassify him to another job. ECF No. 1 at p. 9. The next day, Plaintiff claims Harbaugh carried out his threat by contacting Officer Femi who coerced Dr. Tessema to "write a bogus recommendation for use of a wheelchair." *Id*. Plaintiff states he was never evaluated for the wheelchair order and he claims Dr. Tessema later denied ever writing the order. On January 28, 2010, Plaintiff was removed from his job by Harbaugh who stated his removal was due to security concerns. *Id*.

Plaintiff states that on July 16, 2009, he was still assigned to a state-issued wheelchair but was denied entry to the WCI dining halls through the wheelchair accessible doors by Officers Shaffer, Custer and Booth. ECF No. 1 at p. 10. He claims this caused him to attempt entry through the same doors as non-wheelchair bound inmates resulting in several injuries to himself when attempting to maneuver through tight spaces. Plaintiff claims the offiers involved were ordered to stop denying entry to wheelchair-bound inmates, but they continued to deny safe and convenient entry to the dining hall. *Id*. The officers used the fact that Plaintiff did not want to use a wheelchair all the time as an excuse to deny him access to the dining hall used by handicapped inmates even though the officers were aware of Plaintiff's physical limitations. He claims when he spoke with Toothaker and Lt. Malloy on April 19 and 20, 2010, about the abuse they laughed and failed to intervene. Plaintiff further claims Dr. Tessema is liable because he wrote a fraudulent order for Plaintiff to use a wheelchair during work assignments and outside transports. ECF No. 3 at p. 5. Plaintiff states the order was contrary to all previously written medical orders and was simply an attempt to avoid providing Plaintiff with surgery to repair the damage to his lower back. *Id*.

Plaintiff was transferred to Roxbury Correctional Institution (RCI) on April 29, 2010, despite statements made to him that he needed to be at WCI, the only institution equipped to accommodate wheelchair-bound and disabled prisoners. ECF No. 3. Upon his arrival at RCI Plaintiff claims he was harassed by Lt. G. Heerd, Lt. Timothy D. Munson, Sgt. Samuel Turner and Captain Wesley Crist. Plaintiff claims he filed an administrative remedy complaint regarding the harassment and never received a response, but also claims the Warden, Assistant Warden and his Case Manager promised to transfer him to a facility in Jessup. Plaintiff alleges the promised transfer never took place.[2]

Plaintiff alleges that on March 16, 2009 and July 8, 2009, Officers Wilson, Beal and Beeman, under the supervision of Lt. McKenzie and Friend, retaliated against him for filing grievances and lawsuits when they doused his legal papers with pepper spray during a "bogus" cell search. ECF No. 3 at p. 7. Plaintiff also claims the officers broke open capsules of Prilosec and packets of Metamucil for the sole purpose of emptying the contents on the floor. After trashing his cell, Plaintiff claims the officers escorted him to a separate room where he was humiliated with an intrusive body-cavity search. *Id*. Between March and June, 2009, Plaintiff claims officers "tortured" him by turning off the water in the shower after he had applied soap and shampoo to his "body parts." *Id*. at pp. 7 and 8.

From December 2008 through June 2009, Plaintiff states he was housed in the segregation unit and was deprived of the use of his crutches. ECF No. 3 at p. 9. Plaintiff claims on July 7, 2009, he was "released" (presumably from segregation), was denied basic state-issued clothing for a period of six months, and had to rely on other inmates for clothing. *Id*.

Plaintiff claims that while at RCI he experienced officers walking on the heel of his shoes, causing his shoes to come off of his feet. Each time he went to the prison library at RCI

---

[2] As of February 22, 2011, Plaintiff is incarcerated at Jessup Correctional Institution (JCI). *See* ECF No. 28.

Plaintiff claims he was aggressively questioned about his disability, ordered to place his crutches on a table, and forced to walk through a metal detector unaided. ECF No. 3 at p. 9. In addition Plaintiff states he was denied opportunities to participate in programming and jobs available at RCI.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

ADA Claim[3]

Title II of the Americans with Disabilities Act (ADA) provides that:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Title II of the ADA applies to the administration of state prisons. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 208 (1998). To establish a prima facie case under the ADA, Plaintiff must show that : (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. George Mason Univ.,* 411 F.3d 474, 498 (4th Cir.2005); *Baird v. Rose,* 192 F.3d 462, 467 (4th Cir.1999). States are obliged to make reasonable modifications to comply with the ADA, but are only obligated to make modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade County,* 480 F.3d 1072, 1082 (11th Cir. 2007).

With respect to Plaintiff's claim regarding his job and the requirement that he use a wheelchair while doing his job, the claim fails because his removal from the job was not discriminatory. As concluded by the Inmate Grievance Office ("IGO") , Plaintiff was removed

---

[3] The ADA and the Rehabilitation Act (RA) impose the same requirements and are subject to the same analysis. *See Baird v. Rose*, 192 F. 3d 462, 468 (4th Cir. 1999). Thus only the ADA will be referenced by the Court.

7

from the job assignment "because of his attitude manifested in insubordination, because of his attitude manifested in his disregard of medical advice, and because of safety in the dining hall." ECF No. 19 at Ex. 4, p. 7. Plaintiff was told he could have the job in the dining hall, but would need to use his wheelchair. Plaintiff refused to comply and was removed from the job. The ADA does not require the state to ignore risks to Plaintiff's personal safety simply because he has decided he is willing to take those risks. *See* ECF No. 27 at Ex. 28, p. 2 ("I could fall at anytime regardless of whether it occurs at work."). Additionally, Plaintiff's concerns about being unable to log in with the detail officer stationed in the kitchen area where he was not allowed in a wheelchair was addressed. The detail officer was required to go into the dining room to make sure the inmate workers were there. ECF No. 27 at Ex. 9, pp. 52 – 53. Plaintiff was offered an accommodation for the dietary job, but refused it. The state's duty imposed by the ADA was discharged.

To the extent Plaintiff asserts the Division of Correction has violated the ADA because it has not provided him with adequate job-training programs or opportunities to advance his pay or skills, the claim must fail. There is no evidence that Plaintiff was excluded from an available program because he is disabled. Rather, the evidence establishes that Plaintiff was excluded from his job because of his insubordination. Defendants are not obligated under the ADA to take employ Plaintiff in a job position that takes full advantage of previously acquired skills. They are simply obligated to refrain from discriminating against him based on his disability. The record clearly establishes that Plaintiff was aware of the wheelchair requirement and chose to disobey the directive based on his view the requirement was unnecessary. *See* ECF No. 27 at Ex. 28, p. 2 (needs wheelchair when walking long distance or standing long periods).

Plaintiff's claim against Dr. Tessema fairs no better under the ADA. It is well settled that the failure to attend to the medical needs of disabled prisoners is not a basis for a claim under the ADA. *See, e.g. Miller v. Hinton,* 288 Fed. Appx. 901 (4th Cir. 2008) (prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); *Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir.2005) (medical care provided to inmate for his diabetes could not be basis for RA action); *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under RA and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions); *Spencer v. Easter,* 109 Fed. Appx. 571, 573 (4th Cir. 2004) (failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's disability); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.").

Plaintiff claims that Dr. Tessema wrote a fraudulent medical order for wheelchair use in order to cover up the fact that Plaintiff has been deprived of needed back surgery. ECF No. 1 and 3. Tessema submits medical records indicating that Plaintiff's disability and need for crutches sometimes results in Plaintiff falling when he is handcuffed. ECF No. 21 at Ex. B. For purposes of preventing Plaintiff from injuring himself, an order recommending a wheelchair for Plaintiff when he is being transported and while he is working was written. *Id*. Plaintiff had the option of either using the wheelchair or not. *Id*. at Ex. A. Plaintiff disputes the assertion that he could voluntarily choose to use the wheelchair and states the asserted purposes for the

wheelchair order were never communicated to him until his hearing before the IGO. ECF No. 28 at pp. 3 and 4. Plaintiff states this is a genuine dispute of material fact. He is mistaken. There is no evidence supporting the claim other than Plaintiff's bald assertions that Dr. Tessema was coerced into writing an order for a wheelchair or was attempting to cover-up a failure to provide proper care. Plaintiff's ability to walk is encumbered by his disability and handcuffing makes use of his crutches difficult and dangerous; those facts are sufficient reasons to provide a wheelchair. Dr. Tessema is entitled to summary judgment in his favor.

Eighth Amendment Claim

"Since 'routine discomfort' is part of prison life and 'society does not expect that prisoners will have unqualified access to health care,' in order to demonstrate the objective component of conditions-of-confinement or medical care claims prisoners must demonstrate 'extreme' deprivations or neglect of 'serious' medical needs." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) *citing Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Plaintiff has failed to demonstrate the extreme deprivations required. *See e.g.*, *Fruit v. Norris*, 905 F. 2d 1147 (8th Cir. 1990) (failure to provide inmates with protective gear and ignoring other dangers to personal safety when working inside a raw sewage well established Eighth Amendment violation). Plaintiff asserts that deprivation of a job and an opportunity to earn more money and diminution credits violates the Eighth Amendment. These are not the sort of extreme deprivations constituting cruel and unusual punishment prohibited by the Constitution. A different case might exist if Plaintiff were complaining that he was forced to stand for hours and perform job tasks beyond his physical limitations, resulting in his injury. By contrast, the instant case concerns measures employed to insure Plaintiff is not injured.

Retaliation Claim

Plaintiff claims various officers retaliated against him for filing grievances concerning staff violations under the ADA. The alleged retaliation consisted of denying Plaintiff access through the kitchen door where other non-wheelchair bound inmates entered for work, and confiscation of certain property from his cell. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Legitimate non-retaliatory reasons were provided for every action taken by correctional staff. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285 (1977) (protected activity must be a motivating factor for alleged retaliatory conduct). Plaintiff's removal from the dietary job was due to his insubordination. The refusal to allow Plaintiff to enter through the kitchen door with other workers was based on concerns for Plaintiff's safety. There is no evidence that Defendants were influenced by Plaintiff's litigation. Adverse actions taken against Plaintiff in the wake of his numerous grievances is not enough to establish a claim

of retaliation where there is no evidence that his complaints were the reason for the actions taken.

## Conclusion

The undisputed facts establish there is no basis for finding either a violation of the ADA, the Rehabilitation Act or the Constitution.  Defendants are entitled to summary judgment which shall be granted in a separate Order which follows.

  3/7/11                            /s/
Date                             William M. Nickerson
                                   Senior United States District Judge